UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 00-2246(DSD/SRN)

Matthew Luxton, Kristi Fasnacht and Jennifer Nemitz,

Plaintiffs,

v.

State Farm Life Insurance Company,

Defendant and Third-Party Plaintiff,

v.

United States of America,

Third-Party Defendant.

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT**

Mary Cullen Yeager, Esq., Deborah J. Mackay, Esq. and Faegre & Benson, 2200 Wells Fargo Center, 90 South Seventh Street, Minneapolis, MN 55402-3901, counsel for plaintiffs.

Thomas Heffelfinger, United States Attorney, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415 and Jeffrey S. Swyers, Esq., Daniel R. Conrad, Esq.; U.S. Department of Justice, Tax Division, P.O. Box 7238, Ben Franklin Station, Washington, D.C. 20004, counsel for United States of America.

**INTRODUCTION**

This is an action to determine who receives the proceeds of three insurance policies on the life of Beverly Luxton ("Ms. Luxton"). The case was initially brought in state court against

FILED 1-15-02
RICHARD D. SLETTEN, CLERK
Judgment Ent'd. 1-15-02
Deputy Clerk's Initials ______

State Farm Life Insurance Company ("State Farm") by the named beneficiaries. State Farm removed the action to this court, interpleaded the United States *ex rel* the Internal Revenue Service ("IRS"), and was dismissed after paying into court $320,347.71. After completion of discovery and pretrial proceedings, including cross-motions for summary judgment which were denied on September 10, 2001, this matter came on for trial before the court on November 27, 2001. After two days of trial, testimony and argument, the receipt by the court of exhibits, post-trial briefs and proposals by the parties, the court makes the following:

**FINDINGS OF FACT**

1. Ms. Luxton, the mother of plaintiffs, died of ovarian cancer on September 28, 1999.

2. At the time of her death, Ms. Luxton was the owner and named insured of three life insurance policies issued by State Farm with the following policy numbers and face amounts:

a. No. LF-6,318,458 - $100,000. (Pls.' Ex. 1; Def.'s Ex. 2.)

b. No. LF-6,591,700 - $ 65,000. (Pls.' Ex. 2; Def.'s Ex. 3.)

c. No. LF-1072-3100 - $162,000. (Pls.' Ex. 3; Def.'s Ex. 4.)

3. Insurance policies LF-6,318,458 and LF-6,591,700 contain identical provisions that allow the insured to change beneficiaries and direct State Farm to pay the living primary beneficiaries in

equal shares when the insured dies. These policies also contain the following language:

> Assignment. State Farm Life is not responsible for the validity or effect of any assignment of this policy. Assignments will be recognized only if in writing and filed with State Farm Life. An assignment may limit the interest of any beneficiary.

(Pls.' Ex. 1 and 2; Def.'s Ex. 2 and 3.)

Likewise, policy LF-1072-3100 contains language that allows the insured to change the beneficiaries and directs State Farm to make equal payments to living beneficiaries upon the death of the insured. The assignment language is somewhat different as it says:

> Assignment. You may assign this policy or any interest in it. We will recognize an assignment only if it is in writing and filed with us. We are not responsible for the validity or effect of any assignment. An assignment may limit the interest of any beneficiary.

(Pls.' Ex. 3; Def.'s Ex. 4.)

4. At the time of her death, the beneficiaries of the three policies were:

a. No. LF-6,318,458 - Kristi Fasnacht and Jennifer Nemitz (last beneficiary change April 26, 1994, Def.'s Ex. 5.)

b. No. LF-6,591,700 - Matthew Luxton (last beneficiary change March 4, 1999, (Pls.' Ex. 22; Def.'s Ex. 25.)

c. No. LF-1072-3100 - Matthew Luxton (last beneficiary change March 4, 1999, (Pls.' Ex. 22; Def.'s Ex. 25.)

5. At the time of her death, each of the policies was subject of an identical "Collateral Assignment" to the IRS signed by Ms. Luxton on May 31, 1995, on a form furnished by State Farm and filed with State Farm. (Pls.' Ex. 4, 5, 6; Def.'s Ex. 14, 15, 16.)

6. The assignments contain the following pertinent language:

**Collateral Assignment**

> A. FOR VALUE RECEIVED the undersigned hereby assign, transfer and set over to Internal Revenue Service [handwritten in] ... its successors and assigns, (herein called the "Assignee") Policy No. [policy number filled in by hand] issued by the State Farm Life Insurance Company (herein called the "Insurer") and any supplementary contracts issued in connection therewith (said policy and contracts being herein called the "Policy"), upon the life of Beverly L. Luxton [written in by hand] of [address] and all claims, options, privileges, rights, title and interest therein and thereunder (except as provided in Paragraph C hereof), subject to all the terms and conditions of the Policy and to all superior liens, if any, which the Insurer may have against the Policy. ...
>
> B. It is expressly agreed that, without detracting from the generality of the foregoing, the following specific rights are included in this assignment and passed by virtue hereof:
>
> 1. The sole right to collect from the insurer the net proceeds of the policy when it becomes a claim by death or maturity;

2. The sole right to surrender the Policy and receive the surrendered value thereof at any time provided by the terms of the Policy and at such other times as the Insurer may allow; ...

5. The sole right to exercise all non-forfeiture rights permitted by the terms of the Policy or allowed by the Insurer and to receive all benefits and advantages derived therefrom.

C. It is expressly agreed that the following specific rights, so long as the Policy has not been surrendered, are reserved and excluded from this assignment and do not pass by virtue hereof:

...

2. The right to designate and change the beneficiary;

3. The right to elect any optional mode of settlement permitted by the Policy or allowed by the Insurer;

but the reservation of these rights shall in no way impair the right of the Assignee to surrender the Policy completely with all its incidents or impair any other right of the Assignee hereunder, and any designation or change of beneficiary or election of mode of settlement shall be made subject to this assignment and to the rights of the Assignee hereunder.

D. This assignment is made and the Policy is to be held as collateral security for any and all liabilities of the undersigned, or any of them, to the Assignee, either now existing or that may hereafter arise in the ordinary course of business between any of the undersigned and the

Assignee (all of which liabilities secured or to become secured are herein called "Liabilities").

E. The Assignee covenants and agrees with the undersigned as follows:

1. That any balance of sums received hereunder from the Insurer remaining after payment of the then existing Liabilities, matured or unmatured, shall be paid by the Assignee to the persons entitled thereto under the terms of the Policy had this assignment not been executed;

...

3. That the Assignee will upon request forward without unreasonable delay to the Insurer the Policy for endorsement of any designation or change of beneficiary or any election of an optional mode of settlement.

...

H. The exercise of any right, option, privilege or power given herein to the Assignee, shall be at the option of the Assignee but (except as restricted by paragraph E(2) above) the Assignee may exercise any such right, option, privilege or power without notice to, or assent by, or affecting the liability of, or releasing any interest hereby assigned by the undersigned, or any of them.

...

Signed and sealed this 31st day of May, 1995.
Witness (signature of David Dombrock, Agent).
Policyholder (signature of Beverly L. Luxton).

7. At the time Ms. Luxton executed the assignments the total amount of unpaid federal employment and unemployment taxes and

statutory additions to those taxes owed by her doing business as Main Street Home was in excess of $793,301.39. The current accrued balance of the unpaid federal employment and unemployment tax liabilities and statutory additions owed by Beverly Luxton doing business as Main Street Home exceeds $1,408,535. (Pls.' Ex. 13; Def.'s Ex. 18.) Ms. Luxton operated the Main Street Home as a sole proprietorship between 1983 and 1994 and, during that period, failed to timely file both federal employment tax returns (Form 940) and federal unemployment tax returns (Form 941).

8. In the summer and fall of 1993, IRS agents Patrick Kelly and Lloyd Fritsvold met with Ms. Luxton to help her prepare tax returns for the unpaid taxes. As a result of those meetings, she signed tax returns which provide the basis for the assessments. Ms. Luxton also discussed alternative ways that she could take care of this obligation.

9. Ms. Luxton submitted an Offer in Compromise of her tax liabilities to the IRS on August 4, 1994. (Pls.' Ex. 7; Def.'s Ex. 7.) The Offer in Compromise was to pay $327,000 "upon my death." The amount was the sum of the face values of the three insurance policies on Ms. Luxton's life.

10. The Offer in Compromise submitted by Ms. Luxton was corrected by Agent Fritsvold and returned to her in a corrected state which included details regarding the taxes owed. That Offer in Compromise was returned to the IRS by Ms. Luxton after she

signed and dated it September 2, 1994. It was received and signed by Agent Fritsvold on September 7, 1994. (Pls.' Ex. 10; Def.'s Ex. 9.)

11. The Offer in Compromise was not accepted by the IRS and, by a form letter signed on February 17, 1995, Ms. Luxton acknowledge that it had not been accepted. (Pls.' Ex. 11; Def.'s Ex. 10.)

12. On April 18, 1995, Ms. Luxton signed a request for a loan from State Farm on policy No. LF-6,318,458 in the amount of $1,988 and on policy No. LF1072-3100 in the amount of $6,240. The requests were witnessed by State Farm Agent Dave Dombrock and would have assigned the policies to State Farm. On that same date Ms. Luxton requested a dividend withdrawal for all dividends arising from policy No. LF-6,591,700.

13. Ms. Luxton never delivered the policies at issue here to the IRS, even though Agent Fritsvold requested them. (Def.'s Ex. 8.)

14. Because Ms. Luxton was in need of funds, she was allowed by the IRS to request and receive $5,000 from accumulated dividends in Policy LF-6,318,458 from State Farm in order to pay medical bills and living expenses. (<u>See</u> Pls.' Ex. 16, 17, 18.) It is unclear from the evidence whether she received any loan proceeds.

**CONCLUSIONS OF LAW**

1. In Minnesota, contracts of insurance are interpreted using general principles of contract interpretation. Erickson v. Christie, 622 N.W.2d 138, 140 (Minn. Ct. App. 2001) (citing Lobeck v. State Farm Mut. Auto Ins. Co., 582 N.W.2d 246, 249 (Minn. 1998); Nathe Bros., Inc. v. American Nat'l Fire Ins. Co., 615 N.W.2d 341, 344 (Minn. 2000).

2. The contracts to be interpreted in this matter consist of the three policies owned by and on the life of Beverly L. Luxton as modified by the Collateral Assignment Agreements that were entered into between Ms. Luxton and State Farm. Plaintiffs have challenged the validity of the assignments. First, they claim that there was no consideration for the assignments. The IRS has shown by substantial evidence that the assignments state that they were given "for value received." Further, it has been shown that sufficient consideration was given to State Farm by the payment of premiums by Ms. Luxton.[1] Minnesota law allows the assignment of

---

[1] Plaintiffs argue that no consideration was given by the IRS to Ms. Luxton for this collateral assignment. Of course, the contract modification created by the collateral assignment is not between Ms. Luxton and the IRS. The contract of insurance modified by the assignment and interpreted here is between Ms. Luxton and State Farm. Even if the court were to assume that the IRS had to show that it provided consideration for the collateral assignment, it has done so. The IRS introduced substantial evidence that it gave consideration to Ms. Luxton by proving that Ms. Luxton owed a large debt to the IRS and that the IRS did not foreclose its lien on other assets of Ms. Luxton, including her home. See Minnesota Mutual Life Ins. Co. v. Anderson, 504 N.W.2d 284 (Minn. Ct. App. (continued...)

the proceeds of a life insurance policy to a creditor. Stahel v. Prudential Ins. Co., 249 N.W. 713 (Minn. 1933); Hale v. Life Indemnity and Inv. Co., 68 N.W. 182 (Minn. 1896); see Janesville State Bank v. Aetna Life Ins., 274 N.W. 232 (Minn. 1937). The terms of the underlying insurance policy control whether the policyholder may assign the net proceeds of the policy when assignment is not prohibited by the terms of the policy. Hogue v. Minnesota Packing & Provision Co., 60 N.W. 812, 813 (Minn. 1894); Hale, 274 N.W. 232; Stahel, 249 N.W. at 713. And if an assignment is permitted under the terms of a life insurance policy, the assignment controls and may supersede the rights of a beneficiary that is not an irrevocable beneficiary. See Stahel, 249 N.W. at 714. The policies in this matter allow the beneficiaries to be changed thus making them revocable, imply that an assignment may be made and do not prohibit assignment. No evidence was presented to the court to show that the policies could not be assigned. In fact, each of the policies contains language relating to assignment, how it is performed and specifically contains language that an assignment may limit the interest of any beneficiary. In addition, each of the policies contains language that allows a change in the ownership of the policy. For example, in Policy No. SF-6,318,458 a provision reads:

---

[1](...continued)
1993).

> Change of owner. Ownership may be changed by the owner while the insured is alive by sending State Farm Life a request. ... A change of owner will not change the beneficiary designation.

In this case, Ms. Luxton was both the owner and the insured of the three policies at issue. By entering into the assignment with State Farm she, in effect, gave up all the emoluments of ownership to the IRS with only a few exceptions, including the ability to change the beneficiary retained by her. In effect, after the assignment the IRS became the owner of each of the policies as limited by the terms of the policy and as modified by the assignment. The order of payment section of each of the policies, which the plaintiffs cite as the basic policy language giving the beneficiaries the right to receive the proceeds of the policies on the death of Ms. Luxton, was modified by the assignment which states that the IRS shall have "[t]he sole right to collect from the insurer the net proceeds of the policy when it becomes a claim by death or maturity." (Pls.' Ex. 4, 5, 6; Def.'s Ex. 14, 15, 16 ¶ B1.) In each of the policies, the original language recognizes that an assignment may limit the interest of any beneficiary. In two of the policies the original language states that an assignment will be recognized only if in writing and filed with State Farm, and that "an assignment may limit the interest of any beneficiary." The third and newest policy states that "you may assign this policy

or any interest it. ... An assignment may limit the interest of any beneficiary."

3. The court concludes that Ms. Luxton had the right to make an assignment of the net proceeds of the policy to the IRS, it was her intent to do so, and that she did so with a valid assignment which modified the terms of the policy, limiting the interest of the beneficiaries to the amount remaining after payment of the existing liabilities to the IRS.

4. Plaintiffs believe that there are other grounds why the assignment to the IRS should not be given effect. They argue that, because the assignment forms were not signed by the primary or irrevocable beneficiaries and the execution of the assignments were not acknowledged by a notary public, the assignments were invalid. Notwithstanding these two alleged deficiencies, State Farm did record and file the assignments on June 8, 1995, as attested to by the signature of an assistant secretary of State Farm. The formal requirements of the collateral assignment form enure to the benefit of State Farm and do not affect the validity of the assignment between Ms. Luxton and the IRS. As the circuit court said in Munn v. Robison

> ... it should be observed that provisions in an insurance policy requiring an assignment to be in writing or a change of the name of the beneficiary to be in writing, are for the benefit of the Insurance Company and it alone

> can take advantage of the want of a writing. Such provisions do not affect the validity of an assignment as between the Insured and the Assignee.....

203 F.2d 778, 781 (8th Cir. 1953).

5. Plaintiffs also believe that Minnesota statutory law requires the payment of the proceeds of the insurance to the beneficiaries. Although it is true that the rights of beneficiaries to an insurance policy are construed under Minnesota law, and a portion of Minn. Stat. § 61A states:

> When any insurance is effected in favor of another, the beneficiary shall be entitled to its proceeds against the creditors and representatives of the person affecting the same....

Minnesota law does not nullify a valid assignment of the ownership interests in a policy. Hogue, 60 N.W. 812; Hale, 274 N.W. 232; Stahel, 249 N.W. 713. In this case, where the owner of a life insurance policy retains the right to change the beneficiary, the beneficiaries retain only a contingent interest in the proceeds of the policy. Morgan v. Penn Mut. Life. Ins. Co., 94 F.2d 129, 130 (8th Cir. 1938). Minnesota law does not prohibit an assignment of an insurance policy as security and, generally, a policy is assignable as security as any other chattel may be so assigned. Further, an insured may assign the ownership rights of a policy without consent of the beneficiary where the insured has the right to change the beneficiary "although such act has the affect of precluding the beneficiary of receiving the proceeds of the

insurance to the extent that the assignment is made." See In Re American Range & Foundry Co., 14 F.2d 308 (8th Cir. 1926); 4 Couch on Insurance, § 34:16 (3d ed. 2001). The dearth of Minnesota authority interpreting this statute in light of the fact situation presented here may be because of the potential constitutional problems regarding the impairment of contracts presented by plaintiffs' argument. See U.S. Const. art. I, § 10(1), Minn. Const. art. 1, § 11. Cases interpreting an analogous situation also lead this court to find that Minn. Stat. § 61A.12(1) should not be interpreted to nullify a valid assignment of ownership rights to an insurance contract. See Janesville State Bank, 274 N.W. 232.

6. The plaintiffs produced no evidence to show that the policies had to be delivered to the IRS. Because Ms. Luxton retained the right to change beneficiaries and other rights, and State Farm accepted the assignment, modern insurance practice does not require delivery of the paper policy to the assignee to effect an assignment in a case such as this. See 4 Couch on Insurance, § 36:29-38 (3d ed. 2001).

Further, even though plaintiffs had implied that the assignments were the result of undue influence, no evidence was produced to prove that fact; the evidence received proved that there was no undue influence. (Dombrock Test. T.Tr. Vol. I, pp. 184-190; Fritsvold Test. T.Tr. Vol. II, pp. 25-27; Def.'s Ex. 8.)

**ORDER FOR JUDGMENT**

Based on the foregoing findings of fact and conclusions of law, and because the liability to the IRS exceeds the total face amounts of the policies, the interpleaded funds, the court orders that judgment in the total amount of the interpleaded funds plus all accrued interest shall be entered in favor of defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 15, 2002

David S. Doty, Judge
United States District Court

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

**DATE MAILED TO COUNSEL/PRO SE PARTIES:**

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

*This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.*

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

### Prehearing Conference Program

The United States Court of Appeals for the Eighth Circuit has established an early intervention Prehearing Conference Program. The purpose of the program is twofold: (1) to facilitate settlement discussions in civil cases by providing an impartial atmosphere for an open discussion of the case and alternative methods of disposition and (2) to promote the delineation of issues, early resolution of procedural problems, and effective administration of an appeal throughout the appellate process. See 8th Cir. R. 33A.

The program is directed by Mr. John Martin. Mr. Martin screens newly filed appeals based on information furnished by both appellants and appellees in the court's Appeal Information Forms A and B. Contact with counsel is by telephone and in personal conferences held in several cities throughout the Circuit. All communications with Mr. Martin are confidential. Counsel can openly discuss and evaluate the issues and explore alternatives in a non-adversarial setting without fear that the subsequent processing of the appeal or ultimate disposition of the case will be adversely affected by participation in the program.

Participation in the program is voluntary. However, the Court strongly encourages your participation and cooperation. Over the past twenty years, the program has enabled many appellate litigants to achieve mutually satisfactory resolution of certain issues or an overall settlement prior to progressing through all stages of the appellate process. Issue delineation enables counsel to focus only on those issues that need judicial resolution. The program has helped relieve the ever-increasing caseload confronting the Court, and it has also saved litigants and attorneys substantial amounts of time and money.

In order for the program to function effectively certain information must be provided at the initiation of the appeal. *Eighth Circuit Rule 3B directs each civil appellant to: (1) file a completed Appeal Information Form A with the Notice of Appeal at the time the Notice is filed with the District Court clerk and (2) forward a copy of the completed Form A and a copy of Appeal Information Form B to the appellee for completion.* Appellee may complete Form B and send it to the clerk of the Court of Appeals. If you have any questions about the Prehearing Conference Program or the Appeal Information Forms, please contact Mr. Martin at (314)-539-3669.

Forms A and B are available from the District Court clerk and the Court of Appeals clerk and can be found at the Court of Appeals' web site at: www.ca8.uscourts.gov

*June 1, 2000*

Forms/8thcircuitprehearingconf.wpd

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500